## FRAUDULENT TRANSFER OF SECURITIES BY AN INSOLVENT CORPORATION.

[Circuit Court of ·Cuyahoga County.]

W. D. Sayle, Receiver of the Superior Street Savings & Banking Company, v. The Guarantee Savings & Loan Company et al.

Decided, November 23, 1903.

*Receiver—Of Insolvent Corporation—Has the Same Power to Maintain Suit—Accorded to a Receiver of a Dissolved Corporation—May Sue in his Own Name—Transfer of Securities by an Insolvent Corporation—Fraudulent as to Creditors—The Law of Corporations.*

1. A receiver of an insolvent corporation may commence and maintain a suit to set aside a fraudulent transfer of securities and the recovery of possession thereof, and he may maintain such an action in his own name; all the authority in that behalf accorded to a receiver of a dissolved corporation is possessed by a receiver of an insolvent corporation.

2. A transfer of securities by an insolvent corporation is fraudulent as to its creditors, when the fact of insolvency was known to the manager who made the transfer for the corporation, and the said manager also had knowledge that the claim, in satisfaction of which the transfer was made, was fraudulent.

Marvin, J.; Hale, J., and Winch, J., concur.

Appeal by J. B. Livingston and F. L. Taft, trustees.

The plaintiff in this action was appointed by the Court of Common Pleas of Cuyahoga County and duly qualified as receiver of all of the assets and property of The Superior St. Savings & Banking Company, which is a corporation organized under R. S. Section 3797, in an action brought against said savings and banking company by a creditor of said company.

By the order appointing such receiver he was authorized in express terms "to bring all suits necessary in any court having jurisdiction thereof, for the collecting of debts and the prosecution of any suits or the defense of the same as may be necessary in the proper discharge of his duties herein." This appointment was made on the 23d day of August, 1901.

The defendant, The Guarantee Savings & Loan Company, is a corporation organized under R. S. Sec. 3836-1.

Subsequent to the bringing of the present action, by proceedings properly had in the Supreme Court of Ohio to oust the said savings and loan company from its franchise and wind up its business, the defendants, Frederick A. Taft and J. B. Livingston, were appointed and qualified as trustees of the property of said loan company.

Prior to the appointment of the plaintiff as receiver as hereinbefore set out, to-wit, on the 14th day of August, 1901, The Guarantee Savings & Loan Company, hereinafter called the loan company, brought two suits against The Superior St. Savings & Banking Company, hereinafter called the banking company, in the court of common pleas of this county. In each of said actions the said loan company caused a writ of attachment to be issued against the said banking company, commanding the sheriff to levy upon all the assets of said banking company. No bond was given for such attachment in either of said actions, but assurance was given to the clerk that proper bond would be given. The writs were issued, the levy made and a keeper put into the possession of the property of the banking company at its bank.

The first of these two suits was brought upon two certified checks of the banking company, each of which checks was for $11,000, and purported to be signed by one W. E. Cunningham, and made payable to the order of J. A. Blodt, who was the secretary and general manager of said loan company, and which by said Blodt had been endorsed to said loan company. Said checks each bear date August 7, 1901. The certification of these checks purported to be made by the said banking company and was signed by Frank S. Miller, who was the secretary of the said banking company.

The other suit was for the sum of $50,834.35, claimed to be due to the said loan company on an open account for deposits made by it with the said banking company.

Immediately upon the levy of those attachments the said banking company through its said secretary, Miller, and its president, ———— Tait, had a meeting with the said Blodt

and others representing the said loan company, and effected a settlement of the two suits, by which the said banking company gave to the said loan company its note for $17,925, to secure the payment of which the said banking company then delivered to the said loan company as collateral securities a considerable amount of commercial paper and other securities, all set out and named in the petition herein.

The present suit is brought to set aside this transfer of securities and to recover possession of the same by the plaintiff. In his petition the plaintiff alleges that such securities were obtained by the said loan company in fraud of the said banking company, and especially in fraud of the creditors of said banking company, it being alleged that said banking company, at the time of the transfer of said securities to said loan company, was hopelessly insolvent and was indebted to a large number of creditors and in a large amount. The facts constituting such fraud claimed by the plaintiff are set out fully in the petition. These facts as established by the evidence we find to be:

Neither of the two checks hereinbefore mentioned were ever signed by the said W. E. Cunningham. That fact was well known to the said Miller at the time he certified they were good, as secretary of said banking company, and was also known to the said Blodt when he accepted them. There was no indebtedness of the said banking company to the said loan company or to the said Blodt represented by or justifying the giving of any such checks to the said loan company. The entire transaction of the making of such checks, to which in fact the name of Cunningham was forged, was a scheme got up between Miller and Blodt for the purpose of making it appear that the said loan company had assets which in fact it did not have, and the only thing which the said banking company received for said checks was the notes of the said Blodt, who was hopelessly insolvent, and well known to the said Miller to be thus hopelessly insolvent, and the transfer to said banking company of certain stocks and obligations by the said Blodt which were known by the said Miller and the said Blodt to be valueless.

The other suit brought by the loan company against the banking company was equally without foundation. The ap-

404    CIRCUIT COURT REPORTS—NEW SERIES.

Sayle, Receiver, v. Guarantee S. & L. Co. et al. [Vol. II, N. S.

parent indebtedness of the banking company to the loan company on its books, appearing to be for deposits made by the loan company with the banking company, represented no money actually deposited, but only notes given either by Blodt in his own name or by him in the name of the loan company. The entire plan of making it appear that the banking company was indebted to the loan company was a fraudulent scheme devised by Blodt and Miller for the purpose of making fictitious assets for the loan company that it might be able to pass the examination made by the state officers whose duty it was to make investigation of the affairs of the loan company, and the suits were brought at the instigation of these state officers, who insisted that these apparent assets of the loan company must be converted into money. When the settlement of these suits was made, Miller, as well as Blodt, as has already been said, had full knowledge of the groundlessness of these claims. Tait, the president of the banking compay, gave practically no attention to the business of the bank but left its management almost exclusively to Miller. When the agreement to settle the suits was made Tait was without knowledge of the fraudulent character of these claims, though before the actual transfer of the securities was made he may have had knowledge of the fact that these checks were given and certified without proper consideration. As we view the case, however, it is immaterial whether Tait had such knowledge or not. If he and the officers of the banking company other than Miller were without knowledge of the fraudulent character of the claim, the question might arise in a proper case whether the banking company could maintain an action to set aside this transfer of securities, but that question need not here be determined.

It is urged on the part of the defendant that this action could not be maintained by the plaintiff unless it is such an one as could have been maintained by the banking company itself. We hold this claim not to be well founded. It is true that no statute in Ohio in terms authorizes the bringing of such action by the receiver. Section 6343 provides that such an action may be brought by a creditor and by an assignee; and Section 6140

provides for the bringing of such action by an executor or administrator.

Prior to the enactment of this last section it had been held in the case of *Benjamin* v. *Le Baron's Administrator*, 15 Ohio, 518, that such action could not be maintained by an administrator. The reason for the holding is that the administrator or executor is the personal representative of the decedent or testator, and, therefore, without special authority he could bring no action which he, whom such executor or administrator represents, could not have brought. In this case, it is true the suit was for the recovery of personal property, as in the case under consideration. On page 526 this language is used by Judge Read in the opinion:

"We hold that the administrator can only maintain such action as the intestate might, if living. He represents the intestate; he steps into no other right. As between the fraudulent vendor and vendee, the transfer is good. Such conveyances are void only as to creditors. This is the well-settled doctrine in Ohio. Hence, as between the vendor and vendee in this case, the vendor had no rights, and of course his administrator could have none."

It is well settled that one who conveys his property away for the purpose of defrauding his creditors, can not maintain an action to have the property conveyed back to him, because, being guilty of a fraud in thus transferring his property, he must abide the consequences of such fraud. The executor or administrator is not a representative of the creditors of the decedent, but of the heirs and legatees, and they are entitled to no greater rights than the decedent himself. A receiver, however, is the representative of the creditors. The property is placed in his hands that it may be preserved and distributed to the creditors. The statute, as has already been said, provides for the bringing of such an action by the assignee, who is no more the representative of the creditors than is the receiver, yet the claim is not without force that since the one is named in the statute and the other is not, that the statute meant to make a distinction between them as to the right to bring a suit. No good reason seems to exist why the representative of the creditors,

by whatever name he is designated, should not have the right to bring such suit as the creditor himself might bring.

In the case of *Monitor Furnace Co. et al* v. *Isaac Peters et al*, 40 O. S., 575, it is held that it is the duty of a receiver who was appointed for a dissolved and insolvent corporation to bring suit to set aside conveyances fraudulently made. The language used by Judge Nash in the opinion, on page 583, is:

"It is the right and duty of the receiver of a dissolved and insolvent corporation to pursue after and recover property which has been fraudulently conveyed before the dissolution."

To the same effect is the case of *The Smead Foundry Co.* v. *Chesbrough*, 16 Cir. Ct. Reports, 783.

It is urged, however, that these cases differ from the one at bar in that the receiver in each of these cases was for a dissolved corporation appointed under R. S. Section 5587, and that his powers are found in R. S. Section 5590. Section 5587, paragraph 5, provides in what cases receivers may be appointed, in the following language:

"In the cases provided in this title, and by special statutes, when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

And Section 5590 provides:

"The receiver shall have power, under the control of the court, to bring and defend actions in his own name, as receiver, to take and keep possession of the property, to receive rents, collect, compound for, and compromise demands, make transfers, and generally to do such acts respecting the property as the court may authorize."

Paragraph 6 of Section 5587 provides for the appointment of receivers in all other cases where receivers have heretofore been appointed by the usages of equity.

The receiver in *this* case was appointed for an insolvent corporation. By the usages of equity receivers have been so appointed time out of mind, so that it would seem that whatever

actions a receiver appointed for a dissolved corporation might bring *this* receiver might bring.

In *Whittlesey* v. *Delaney,* 73 N. Y., 571, the first paragraph of the syllabus reads:

"An action to set aside and vacate a judgment against a corporation on the ground that it was obtained without consideration, by collusion with the officers of the corporation, and in fraud of creditors, may properly be brought in the name of and by a receiver of the corporation."

In Section 72 of Smith on Receiverships, this language is used:

"The power of the receiver to sue in his own name has been recognized however where the order of court so directs, or the statute so authorizes. But in the absence of such power he must sue in the name of the person or corporation over whose property he is appointed. * * *

"Where a court of chancery in the order of appointment confers power on the receiver to sue, he may do so on the principle that the receiver is, by operation of law, subrogated to all the rights of the real party in interest."

We are aware that many cases are reported which hold that a receiver in a case like this can not maintain the action in his own name. We hold, however, that this action can be so maintained. We see no reason why a receiver appointed for a dissolved corporation may under our statutes bring such action unless the receiver of an insolvent corporation may also maintain the action.

This brings us to a consideration of the question whether under the facts in this case the transfer of the securities made by the banking company to the loan company upon the settlement of the suits brought by the latter against the former, was fraudulent as to creditors of the banking company. That the latter was insolvent at the time of the transfer can not be doubted; that such insolvency was known to Miller, the manager, is equally certain; that Miller knew that there was no just claim upon the certified checks and upon the greater part of the open account is absolutely certain. The reason why he should be in a hurry to settle these cases is not difficult to find.

He had committed a wrong which might very probably subject him to a criminal prosecution, and he was, of course, anxious to get into his hands these checks which he had certified and which, though purporting to be drawn by Cunningham, he knew were never signed by him. The evidence shows that immediately upon getting these checks into his hands, he did what he might very naturally be expected to do, destroy them.

As to the bank account, as has already been said, the greater part of it was made up of an apparent indebtedness to the loan company which in fact only existed because of notes which Blodt had given, he being, as Miller doubtless knew, entirely without security other than absolutely worthless collaterals.

Without going further into a discussion of the facts in the case, we hold that the plaintiff is entitled to have the securities which he seeks transferred to him upon his transferring to the trustees of the loan company the collaterals which he by his petition tenders to them. A decree may be drawn accordingly. As to the further judgment in the case, it will be as the judgment was in the court of common pleas.

*Carpenter, Young & Stocker,* for plaintiff.

*Smith & Taft,* for defendants.